**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| MICHAEL POTTER, ) | |
| ) | CASE NO. 1:04CV2161 |
| Petitioner, ) | |
| ) | JUDGE ALDRICH |
| v. ) | |
| ) | MAGISTRATE JUDGE VECCHIARELLI |
| RICH GANSHEIMER, Warden, ) | |
| ) | **REPORT & RECOMMENDATION** |
| Respondent. ) | |

Petitioner, Michael Potter, ("Potter"), challenges the constitutionality of his conviction in the case of *State v. Potter*, Case No. CR 408058. Potter, through counsel, filed a Petition for Writ of Habeas Corpus (Doc. No. 1) pursuant to 28 U.S.C. § 2254 on October 28, 2004 with the United States District Court for the Northern District of Ohio. This matter is before the undersigned Magistrate Judge pursuant to Local Rule 72.2. For reasons set forth in detail below, the Magistrate Judge recommends Potter's petition (Doc. No. 1) be DENIED.

## I. Procedural History

### A. Conviction

The Cuyahoga County Grand Jury returned a two-count indictment charging Potter with one count of felonious assault in violation of Ohio Revised Code ("O.R.C.") § 2903.11 and one count of endangering children in violation of O.R.C. § 2919.22. (Doc. No. 7, Exh. 1.) On January 22, 2002, a jury found Potter guilty on both counts. (Doc. No. 7, Exh. 2.) On February 19, 2002, the trial court sentenced Potter to concurrent prison terms of four years on each count. (Doc. No. 7, Exh. 3.)

### B. Direct Appeal

On March 19, 2002, Potter, through counsel, appealed the trial court's judgment and sentence to the Ohio Court of Appeals. (Doc. No. 7, Exhs. 7, 8.) On March 20, 2003, the Court of Appeals affirmed the trial court's judgment. (Doc. No. 7, Exh. 11.)

On March 31, 2003, Potter filed a motion to certify a conflict in the Court of Appeals. (Doc. No. 7, Exh. 12.) On April 23, 2003, the Court of Appeals denied Potter's motion. (Doc. No. 7, Exh. 14.)

On May 15, 2003, Potter, through counsel, appealed to the Ohio Supreme Court. (Doc. No. 7, Exhs. 16, 17.) On July 30, 2003, the Ohio Supreme Court denied Potter leave to appeal and dismissed the appeal as not involving substantial constitutional question. (Doc. No. 7, Exh. 19.)

### C. Federal Habeas Corpus Petition

On October 28, 2004, Potter, through counsel, filed a Petition for Writ of Habeas Corpus, asserting three grounds for relief:

> GROUND ONE: The evidence was insufficient to sustain the

2

> convictions in violation of the Fifth and Fourteenth Amendments.
>
> GROUND TWO: The State's witness improperly opined about the truthfulness of the defendant's out-of-court statement.
>
> GROUND THREE: The prosecutor made improper comments in final argument by (a) equating guilt with a statistical probability, (b) asking the jurors if they would trust the defendant as a caregiver for their children, and (c) arguing that defense counsel did not ask the defense expert witness if the expert held an opinion to a reasonable degree of certainty because the defense attorney knew that the expert would answer in the negative.

(Doc. No. 1.)

## II.  Procedural Default

Procedural default occurs when the petitioner fails to present his federal constitutional claim to the state courts in the manner required by state procedural law, and the state courts impose the procedural bar of refusing to review the merits of the alleged error.  Even constitutional errors will not be noticed on federal habeas corpus review if an adequate and independent state law ground exists for upholding the conviction or sentence.  *Coleman v. Thompson,* 501 U.S. 722, 729-32 (1991).  The time limit prescribed by a state for filing an appeal is an adequate and independent state ground.  *Id.* at 751.

However, the procedural default may be excused if the petitioner shows cause for the procedural default and prejudice from the alleged error.  *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). Specifically, the Sixth Circuit's *Maupin* decision sets out four inquiries that a district court should make when the state argues that a habeas claim has been defaulted by petitioner's failure to observe a state procedural rule.  First, the court must determine whether there is such a procedural rule

that is applicable to the claim at issue and whether the petitioner did, in fact, fail to follow it. *Id.* at 138. Second, the court must decide whether the state courts actually enforced its procedural sanction. *Id*. Third, the court must decide whether the state's procedural forfeiture is an "adequate and independent" ground on which the state can rely to foreclose review of a federal constitutional claim. Such a rule is adequate if it is regularly or consistently applied by the state court, *Johnson v. Mississippi*, 486 U.S. 578, 587 (1988), and is independent if it does not depend on a federal constitutional ruling. *Ake v. Oklahoma*, 470 U.S. 68, 75 (1985). And, fourth, the petitioner must demonstrate, consistent with *Wainwright v. Sykes*, 433 U.S. 72 (1977), that there was "cause" for him to neglect the procedural rule and that he was actually prejudiced by the alleged constitutional error. *See also Coleman*, 501 U.S. at 750 ("In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.").

Under the second prong of the *Maupin* analysis, the court must actually rely on the procedural bar as an independent basis for its disposition of the case. *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985); *see also Coleman v. Thompson*, 501 U.S. 722, 750 (1991) (The last state court rendering a reasoned judgment on the matter must "clearly and expressly" state that its judgment rests on such a procedural bar for the doctrine of procedural default to apply.). A predicate to the application of the presumption that state court opinions lacking such a "clear and express" statement of reliance on a state procedural bar do not preclude federal habeas review of the claim at issue is that the

decision of the last state court to which the petitioner presented his federal claims must fairly appear to rest primarily on federal law or to be interwoven with federal law. *See Coleman*, 501 U.S. at 735. Further, review by a state court of an otherwise procedurally defaulted claim to determine whether the error, if any, constituted a manifest miscarriage of justice does not revive the defaulted claim for purposes of federal habeas corpus review. *Scott v. Mitchell*, 209 F.3d 854, 868 (6th Cir. 2000) ("manifest injustice" review by state court of defaulted claim does not constitute waiver of the default); *see also Seymour v. Walker*, 224 F.3d, 542, 557 (6th Cir. 2000) (Court of Appeals' plain error review does not constitute waiver of state procedural rules).

In the instant action, Respondent asserts that Potter procedurally defaulted his third ground for relief. In this ground, Potter claims that the prosecutor made improper statements during closing argument. In addressing this claim, the Court of Appeals noted that Potter's counsel failed to object to the prosecutor's closing argument and then set forth the standard for plain error review. Respondent asserts that the Court of Appeals applied the contemporaneous objection rule, a procedural bar, and reviewed Potter's claim for plain error.

Respondent's argument is without merit. The Court of Appeals did not "clearly and expressly" state that its judgment rested on the procedural bar. Although the Court of Appeals cited the plain error standard, it then set forth the test for prosecutorial misconduct during closing argument. The Court of Appeals then applied the prosecutorial misconduct test to each of the prosecutor's three alleged improper statements. Other than setting forth the plain error standard prior to its analysis, the Court of Appeals did not refer to "plain error" or "manifest miscarriage of justice" in its analysis or conclusion. Further, the Court of Appeals' analysis was interwoven with federal law, as the court cited

5

some federal law regarding prosecutorial misconduct. *See Coleman*, 501 U.S. at 735. This is the same analysis and legal framework the Court of Appeals would have employed even if Potter's counsel objected to the closing argument. Under these circumstances, the procedural bar is not an independent basis for the Court of Appeals' disposition of the claim. Thus, Respondent's argument fails under the second prong of the *Maupin* analysis. Accordingly, this Court will address Potter's claim of prosecutorial misconduct on the merits. *See*, *infra*.

### III. Standard of Review under the AEDPA - Review on Merits

This case is governed by provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (April 24, 1996), because Potter filed his habeas petition after the effective date of AEDPA. *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997). The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Federal courts are bound by a state court's determination of a petitioner's claims, unless the decision by the state court involved an unreasonable application of clearly established federal law. *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir.1998). In *Williams v. Taylor*, 529 U.S. 362, 411

(2000), the Supreme Court held that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Stated differently, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. The Court noted that the term "unreasonable" is "no doubt difficult to define," but the Court did not expound on the word's meaning in this context, instead stating that "it is a common term in the legal world, and, accordingly, federal judges are familiar with its meaning." *Id*. at 410. The Sixth Circuit interprets the *Williams* test to mean if a court "believe[s] that a state court incorrectly applied federal law, [it] must refuse to issue the writ of habeas corpus if [it] finds that the state court's decision was a reasonable one." *Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000).

## IV. Review on the Merits

**Ground One: Insufficiency of the Evidence**

In his first ground for relief, Potter claims that he was denied due process because the evidence

7

was insufficient to sustain his convictions for felonious assault[1] and endangering children.[2] At trial, the State offered testimony of four medical experts, all supporting the contention that the victim's injuries resulted from being shaken, and not from Potter's version of events, *i.e.*, falling off of a recliner. Specifically, Dr. Kaleford Hong, the senior radiology resident at Rainbow Babies and Children's Hospital ("Rainbow Babies"), testified that the victim's injuries only could have been caused by an excessive force of trauma. (Doc. No. 7, Exh. 6, pp. 273, 317.) Dr. Deana Dahl-Grove, the attending pediatric physician in the emergency room, testified that Potter's version of how the victim was injured was inconsistent with the nature of the victim's injuries. (*Id.* at 337.) Dr. Amy Jeffery, a pediatric ophthalmologist, testified that the severity of the victim's injuries were consistent with Shaken Baby Syndrome and not falling from a recliner. (*Id.* at 390-92.) Dr. Lolita McDavid, the director of child advocacy and protection at Rainbow Babies, testified that it is common for victims of Shaken Baby Syndrome not to exhibit external bruises. (*Id.* at 439.) Each of these experts testified to a reasonable

---

[1] O.R.C. § 2903.11(A) states:

No person shall knowingly do either of the following: (1) cause serious physical harm to another or to another's unborn; or (2) cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance.

[2] O.R.C. § 2919.22(B) states:

No person shall do any of the following to a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age: (1) abuse the child; or (2) torture or cruelly abuse the child. The State must prove recklessness on

the part of the defendant. *State v. Adams*, 62 Ohio St.2d 151 (1980).

degree of medical certainty that the victim's injury was most probably caused by a violent trauma such as being shaken, and extremely unlikely that such injuries were caused from falling off of a recliner. (*Id.* at 237, 288, 289, 351, 390, 392, 400, 451, 453.)

The defense offered testimony of Dr. John Plunkett, the laboratory and medical education director at Regina Hospital in Hastings, Minnesota, and assistant coroner for the Minnesota Regional Coroner's Office. Dr. Plunkett testified that: he reviewed the victim's medical records and concluded that the victim's internal head injuries were not consistent with being shaken, but required an impact with a non-yielding surface such as a floor; and the victim's arm injury and goose-egg bump on the back of her head were not consistent with being shaken.

In dismissing this claim, the Court of Appeals summarized this evidence and found it was sufficient for the jury to conclude beyond a reasonable doubt that Potter was guilty of the offenses.

The due process clause of the Fourteenth Amendment requires that a criminal conviction be based upon proof beyond a reasonable doubt as to every fact necessary to constitute the offense charged. *In re Winship*, 397 U.S. 358, 363-64 (1970). The standard for determining sufficiency of the evidence is "whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 317 (1979). In reaching its determination as to the sufficiency of the evidence, a court may not substitute its determination of guilt or innocence for that of the factfinder, nor may it weigh the credibility of witnesses. *See id.*; *see also Walker v. Engle*, 703 F.2d 959, 970 (6th Cir. 1983).

The Supreme Court reemphasized the deference federal courts are to give factual

determinations in state court convictions in *Wright v. West*, 505 U.S. 277, 296 (1992). In that case, the Court stated that "[i]n *Jackson*, we emphasized repeatedly the deference owed to the trier of fact and, correspondingly, the sharply limited nature of constitutional sufficiency review." Further, "[a]ny conflicting inferences arising from the record . . . should be resolved in favor of the prosecution." *Heinish v. Tate*, 9 F.3d 1548, 1993 WL 460782 (6th Cir. 1993) (unpublished opinion) (citing *Walker*, 703 F.3d at 969-70).

In the instant action, any rational trier of fact could have found the essential elements of felonious assault and endangering children beyond a reasonable doubt. The State offered testimony of four medical experts. The experts opined to a reasonable degree of medical certainty that it was extremely unlikely that the victim's injuries were sustained from falling off the recliner, as claimed by Potter. The experts stated the victim's injuries were most likely caused by violent trauma, consistent with shaking. The evidence also shows that the victim was in good health when her mother left that day and Potter was taking care of the child. In light of this evidence, any rational trier of fact could have found the essential elements of felonious assault and endangering children beyond a reasonable doubt. Therefore, the Court of Appeals' decision is neither contrary to, nor an unreasonable application of clearly established federal law. Accordingly, this claim should be dismissed.

**Ground Two: State Witness's Opinion Regarding Truthfulness**

In his second ground for relief, Potter claims that the State's witness improperly opined about the truthfulness of Potter's out-of-court statement regarding his version of the events that caused the victim's injury. At trial, Detective Boresz described Potter's physical actions, *i.e.*, shaky voice, dry mouth, fake crying, when Potter was describing his version of what happened to the victim. Then, upon

10

the Court overruling the defense's objection, the detective testified, " It just seemed that possibly everything [Potter] was telling us maybe wasn't truthful." Although the Court of Appeals found that the trial court erred in admitting the detective's testimony regarding Potter's veracity, it determined such error was harmless because the error was not so egregious as to warrant a reversal of the jury's verdict.

It is well-established that alleged trial court errors in the application of state procedure or evidentiary law, particularly regarding the admissibility of evidence, are generally not cognizable as grounds for federal habeas relief. *See Pulley v. Harris*, 465 U.S. 37, 41 (1984); *see also Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988). Instead, questions concerning the admissibility of evidence, as well as its probative or prejudicial value, are properly left to the sound discretion of the trial court. *See Oliphant v. Koehler*, 594 F.2d 547, 555 (6th Cir. 1979). "A state court evidentiary ruling will be reviewed by a federal habeas court only if it were so fundamentally unfair as to violate the petitioner's due process rights." *See Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001); *see also Schoenberger v. Russell*, 290 F.3d 831, 836 (6th Cir. 2002) ("[O]nly in extraordinary cases will an error in the application of state rules of evidence rise to the level of a due process violation in a federal habeas proceeding"); *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (Generally, state court evidentiary rulings cannot rise to the level of due process violations unless they "offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental") (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)).

In the instant action, the admission of the detective's testimony did not violate Potter's due process rights. Even deferring to the Court of Appeals' finding that the trial court's admission of the

11

testimony was error under state law, this Court finds such error was harmless.[3] Disregarding the detective's statement, there was overwhelming evidence establishing that Potter's version of the events was not true. Four medical experts testified to a reasonable degree of medical certainty that the victim's injuries were caused by violent trauma and not by a fall from eighteen to twenty inches. *See*, *supra*, for a summary of the evidence. The detective's statement did not have a substantial and injurious effect or influence in determining the jury's verdict.

**Ground Three: Prosecutorial Misconduct**

In his third ground for relief, Potter claims that the prosecutor made improper arguments during closing argument. Potter refers to three instances of alleged misconduct. First, Potter claims that the prosecutor suggested Dr. Plunkett's testimony that there was a small chance the victim could have been injured by an accidental fall was so statistically improbable that it could not be considered a reasonable doubt. Dr. Plunkett testified that it would be "rare" for the victim to sustain the injuries from a fall of eighteen inches. (Doc. 7, Exh. 22.) The prosecutor stated:

> [The State has] to provide you with proof of such a character that an
> ordinary person would be willing to rely upon it in the most important of
> his or her own affairs, willing to rely upon it, not be absolutely
> convinced beyond any shadow of doubt. So if you believe Dr.
> Plunkett's theory applies in this case, and that the four doctors from
> Rainbow Babies and Children have to be wrong, then you're holding
> the State to a burden way beyond reasonable doubt, you're holding
> [the State] to an unfair burden because the best his so-called expert
> could do is say it's rare.

---

[3] Under federal habeas review, reversal is proper only when a trial error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

12

(Doc. No. 7, Exh. 6R.) The Court of Appeals found that the prosecutor simply stated that the State's burden is to prove guilt beyond a reasonable doubt and if the State had to exclude every possibility, then its burden would not be "beyond a reasonable doubt," but rather "beyond any shadow of doubt." The Court held that this alleged inference of statistical likelihood by the prosecutor was so slight as to be immaterial.

Second, the prosecutor told the jury to ask themselves whether they would "entrust [their] child to [Potter] to watch." The Court of Appeals held this statement was "irrelevant and harmless at best." The Court of Appeals distinguished a state case cited by Potter by finding that the prosecutor's statement was not the same as asking the jurors to step into the victim's shoes and graphically describing the attack on the victim. The Court of Appeals found that the prosecutor did not rely on facts outside of the evidence or incite the jurors' emotions by utilizing graphic descriptions of the trauma suffered by the victim.

Third, the prosecutor stated that defense counsel failed to ask the defense expert if he held his opinion to a reasonable degree of certainty because counsel knew that the expert would answer in the negative. The prosecutor stated:

> I asked towards the end of [the State experts'] testimony, I asked the following question:
>
> Based upon your education, training and experience, and within a reasonable degree of medical certainty, do you have an opinion, and/or a diagnosis with regards to this case. You never heard that question posed to Dr. Plunkett by [defense counsel].
>
> Why do you think that is?
>
> Because he couldn't give you an opinion based on reasonable degree

13

> of medical certainty . . . and that's why [defense counsel] didn't ask
> that question. Folks, that's a standard question we ask experts and
> medical people all the time. In fact, you practically have to ask it if
> that's what you're purporting to bring out on testimony.

(Doc. No. 7, Exh. 6R.) The Court of Appeals found that the prosecutor's statement did not suggest that defense counsel was attempting to deceive the jury, but simply drew attention to the fact that the State's expert testimony was based on a reasonable degree of medical certainty and the defense expert's testimony was not.

To constitute a constitutional violation, a prosecutor's misconduct must "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974). The Sixth Circuit has set forth a totality of the circumstances approach to evaluate alleged instances of prosecutorial misconduct, that include the following factors: (1) the degree to which the remarks complained of have a tendency to mislead the jury and prejudice the accused; (2) whether they are isolated or extensive; (3) whether they were deliberately or accidentally placed before the jury; and (4) the strength of the competent proof to establish the guilt of the accused. *Hill v. Brigano*, 199 F.3d 833, 847 (6th Cir. 1999) (quoting *Angel v. Overberg*, 682 F.2d 605, 608 (6th Cir. 1982)). Further, instances of prosecutorial misconduct are subject to harmless error analysis. *See Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997).

In the instant action, the prosecutor's comments did not deprive Potter of his right to due process. The prosecutor's comment on Dr. Plunkett's testimony and reasonable doubt was, at most harmless error. In the closing argument, defense counsel stated that Dr. Plunkett's testimony, *i.e.*, that Potter's theory of what happened would be a rare case, created a reasonable doubt, and did not

14

require proof beyond a shadow of a doubt. Then, on rebuttal, the prosecutor, in the statement cited above, fairly responded to defense counsel's argument. Any error was harmless. The trial court instructed the jury on reasonable doubt.

The prosecutor's statement about defense counsel's failure to ask his expert whether he held his opinion within a reasonable degree of medical certainty was not improper. The prosecutor was highlighting to the jury the fact that the State's experts all indicated that they held their opinions within a reasonable degree of medical certainty, while the defense's expert did not state the same for his opinion. This was an accurate and fair comment.

In regard to the prosecutor's statement of whether the jurors would entrust their children to Potter, the prosecutor improperly attempted to appeal to the jurors' emotions and sympathy. However, given the totality of the circumstances, the statement was harmless and did not prejudice Potter. There was strong evidence establishing Potter's guilt.[4] The State presented four medical experts who testified to a reasonable degree of medical certainty that the victim's injuries were caused by violent trauma and not by a fall from eighteen to twenty inches. There was no testimony to a reasonable degree of certainty to the contrary. *See*, *supra*, for a summary of the evidence. Therefore, the Court of Appeals' decision is neither contrary to, nor an unreasonable application of clearly established federal law. Accordingly, this claim should be dismissed.

---

[4] The trial court also stated during the jury instructions:

It also follows that in strict keeping with your oath you refuse absolutely to be moved, swayed or influenced by consideration such as sympathy for, or bias, or prejudice against, . . . the Defendant in this case. (Doc. No. 7, Exh. 23.)

## V. Conclusion

For the foregoing reasons, the Magistrate Judge recommends Potter's Petition for Writ of Habeas Corpus (Doc. No. 1) be DENIED.

/s/ Nancy A. Vecchiarelli
U.S. Magistrate Judge

Date: May 20, 2005

**OBJECTIONS**

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of this notice.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**