IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL POTTER, | ) | Case No. 1:04CV2161 |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Judge Ann Aldrich |
| | ) | |
| RICH GANSHEIMER, Warden | ) | Magistrate Judge Vecchiarelli |
| | ) | |
| Respondent. | ) | MEMORANDUM AND ORDER |

On October 28, 2004, petitioner Michael Potter ("Potter") filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 (Docket No. 1), in which he challenges the constitutionality of his conviction for felonious assault and child endangerment. *See State v. Potter*, Cuyahoga County Court of Common Pleas No. CR 408058. Now before the court is a report and recommendation issued by Magistrate Judge Vecchiarelli, recommending that the court deny Potter's petition (Docket No. 8). For the following reasons, the court adopts the Magistrate Judge's findings of fact and conclusions of law, and denies Potter's petition.

**I. Background**

On April 10, 2001, Potter's seven-month-old daughter, Samantha, sustained serious injuries while solely in Potter's care. Potter claims that on the morning of April 10, he gave Samantha a bottle and placed her in a reclining chair while he went into the kitchen to prepare some oatmeal. While in the kitchen, Potter claims, he heard a "thump" and rushed back into the living room, where he found Samantha unresponsive and lying on the floor. Potter then went to a nearby apartment to call 911 (as his unit did not contain a telephone).

Samantha was transported to Rainbow Babies and Children's Hospital where it was determined that she had an evolsion fracture to her right forearm, a subdural hematoma, and subdural and subarchnoid hemorrhaging.  Upon hearing Potter's version of events as to how Samantha sustained these injuries, hospital personnel became suspicious. They notified authorities, and an extensive investigation was conducted.

In May of 2001, Potter was indicted by a Cuyahoga County grand jury. The indictment contained one count of felonious assault, in violation of Ohio Revised Code § 2903.11, and one count of child endangerment, in violation of O.R.C. § 2919.22.

At trial, four medical experts testified that Samantha's injuries were most likely caused by an excessive force trauma, such as shaken baby syndrome or shaken impact syndrome. The experts testified that the injuries were thus not likely to have been caused, as Potter contended, by a fall from a recliner. A defense expert testified that, in his opinion, Samantha's internal head injuries were not consistent with being shaken, but required an impact with a non-yielding surface, and that Samantha's arm injury and the bump on the back of her head were also not consistent with being shaken.  On January 22, 2002, a jury found Potter guilty on both counts of the indictment. On February 19, 2002, Potter was sentenced to four years' imprisonment on each count, to run concurrently.

On March 19, 2002, Potter filed an appeal citing six assignments of error. On March 20, 2003, the Ohio Court of Appeals affirmed the trial court's judgment on all six issues.  On July 30, 2003, the Ohio Supreme Court dismissed Potter's subsequent appeal as not involving a substantial constitutional question. This action followed.

## II. Discussion

Federal Rule of Civil Procedure 72 (b) requires this Court to review *de novo* any portion of the Magistrate Judge's disposition to which specific objections have been made. Accordingly, Local Rule 72.3 (b) requires that objections "specifically identify the portions of the proposed findings, recommendations, or reports to which objection is made and the basis for such objections." A District Judge "shall make *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge." *Id.*

Additionally, the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. §2241 *et seq.*, govern the court's review of petitions for habeas corpus relief. AEDPA dictates that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
>   (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>   (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d)(2004). In *Williams v. Taylor*, 529 U.S. 362 (2000), the Supreme Court explained the "contrary to" language of section (1) as follows:

> A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases ... A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.

*Id*. at 405-406, and the "unreasonable application" language thusly:

> an unreasonable application of federal law is different from an incorrect application of federal law ... In § 2254(d)(1), Congress specifically used the word "unreasonable, " and not a term like "erroneous" or "incorrect." Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id*. at 410-11.

Potter first objects to the Magistrate Judge's finding regarding the sufficiency of evidence presented to support his convictions. The Due Process clause of the Fourteenth Amendment prohibits the criminal conviction of any person except upon proof of guilt beyond a reasonable doubt. *Pilon v. Bordenkircher*, 444 U.S. 1, 2 (1979) (quoting *In Re Winship*, 397 U.S. 358 (1970)). In considering a petition for habeas relief on insufficiency grounds, the court must inquire "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).)

Potter claims that the evidence presented against him did not establish beyond a reasonable doubt that he acted "knowingly" under O.R.C. § 2903.1. Section 2903.11(A) states that "no person shall knowingly do either of the following: (1) Cause serious harm to another or to another's unborn; (2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance." According to O.R.C. § 2901.11, "a person acts knowingly ... when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."

During Potter's trial, the state presented four medical experts who testified to a reasonable degree of medical certainty that it was extremely unlikely that Samantha's injuries were sustained by a fall from a recliner chair onto a carpeted floor approximately 1-2 feet below. Each of the State's medical experts concluded that Samantha's injuries were most likely sustained by some type of violent trauma akin to shaken baby or shaken impact syndrome.

Potter cites the testimony of Dr. Lolita McDavid in support of his contention that, even if he caused Samantha's injuries, the evidence failed to show that he *knew* that shaking her would cause harm. Dr. McDavid testified that shaken infant syndrome can occur from shaking a baby as few as six or seven times, due to the weak and delicate nature of a infant's anatomy. Potter points to Dr. McDavid's assertion that intent is irrelevant to a shaken baby diagnosis as a clear indication that the evidence presented was insufficient to support his conviction.

However, the jury need not find the specific intent to shake a baby to death in order to convict the shaker of felonious assault under O.R.C. § 2903.11. Potter, as the record reveals, was a 26-year-old frequent caretaker of two young daughters. The jury might reasonably have found that someone with Potter's age and relative experience would have been aware that shaking or abusing a baby would cause the tragic result which here ensued. Given the factual evidence and the expert testimony presented, a rational trier of fact could thus have found the essential elements of felonious assault beyond a reasonable doubt.

Potter also claims that the evidence presented against him failed to establish that he acted "recklessly," as required to sustain a conviction for child endangerment under O.R.C. § 2919.22. That section states, in pertinent part,

> (A) No person, who is the parent, guardian, custodian, person having custody or control, or person *in loco parentis* of a child under eighteen years of age ... shall create a

-5-

> substantial risk to the health or safety of the child, by violating a duty of care, protection, or support. ...
>
> (B) No person shall do any of the following to a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age:
>
>> (1) Abuse the child;
>>
>> (2) Torture or cruelly abuse the child;
>>
>> (3) Administer corporal punishment or other physical disciplinary measure, or physically restrain the child in a cruel manner or for a prolonged period, which punishment, discipline, or restraint is excessive under the circumstances and creates a substantial risk of serious physical harm to the child;
>>
>> (4) Repeatedly administer unwarranted disciplinary measures to the child, when there is a substantial risk that such conduct, if continued, will seriously impair or retard the child's mental health or development;

The Ohio Supreme Court, noting that O.R.C. § 2919.22(B)(1) does not specify a sufficient *mens rea*, has held that the state must prove recklessness on the part of the defendant in order to support a guilty verdict under that section. *State v. Adams*, 404 N.E.2d 144, 145 (Ohio 1980). Recklessness is defined by O.R.C. § 2901.22(C) as follows:

> A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist.

The evidence presented at trial tended to show that Samantha's injuries were caused by some manner of violent trauma. To inflict a violent trauma upon an infant child is clearly a reckless act, bearing an inherent risk that substantial injury would occur as a result. Potter's actions in this regard could lead any rational trier of fact to the conclusion that Potter committed child endangerment beyond a reasonable doubt. The court therefore adopts the Magistrate Judge's findings on this point, and finds that

the state appellate court did not act unreasonably or contrary to established federal law in dismissing Potter's appeal.

Potter's second and final objection concerns the Magistrate Judge's disposition of his claim regarding prosecutorial misconduct during closing arguments. Potter objects to aspersions allegedly cast by the prosecutor on defense counsel's failure to ask an expert whether he held his opinion with "a reasonable degree of certainty." (The implication being that defense counsel failed to ask because he knew that the expert would answer in the negative). Potter refers to the comment in his petition as a "gratuitous attac[k] on the veracity of defense counsel."

The Magistrate Judge found that Potter had waived all of his objections to allegedly improper closing remarks, through procedural default. The Magistrate Judge reached this conclusion through careful application of the familiar, and applicable, *Maupin* test. *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). Potter's objections raise no new argument relevant to the procedural analysis, but instead restate substantive complaints regarding the prosecution's remarks. As such, the court finds no reason to depart from the Magistrate Judge's reasoning.

### III.  Conclusion

For the foregoing reasons, this court adopts Magistrate Judge Vecchiarelli's findings of fact and conclusions of law.  Potter's petition for a writ of habeas corpus is therefore denied.

Upon its finding that Potter has not made a substantial showing of the denial of a constitutional right, the court declines to issue a certificate of appealability for this order. *See* 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

    /s/ Ann Aldrich
ANN ALDRICH
UNITED STATES DISTRICT JUDGE

**Dated: April 11, 2006**